May it please the Court, I'm Katherine Barton for the United States. With me at counsel table is Dawn Springmeyer, counsel for the tribe. Our plan is for me to take ten minutes and Dawn to take five on opening and say if I have a rebuttal. Okay, watch your own time please. Right, it's a little hard here actually. So the United States brought this action pursuant to a statutory directive of Congress in order to recoup Truckee River water that TCID intentionally and repeatedly diverted as this court and the district court found in willful violation of the operating criteria and procedures for the Newlands Project, which thus deprived that water from flowing to Pyramid Lake, the endangered fish species and the tribe. So in our last appeal here, we argued to this court that the district court erred in calculating recoupment by making across the board reductions in the USGS published gauge data by the amount of the confidence intervals, the margin of error, and this court agreed. But then on remand, the district court denied us for recoupment for four years in which those recalculations showed that TCID had made unlawful diversions and for which it was due based solely on one sentence in this court's opinion. Kagan. Or the conclusion. In the conclusion, right. The final summary remand instructions. And thus failed to effectuate the holding of this court. Well, whether it was the holding was that they made a mistake in the method, but it didn't deal with what years were covered. And then the conclusion did deal with what years were covered. So it wasn't contrary to the holding. The holding would apply to those years. Well, I guess, I mean, the substantive holding was there was no other – there was no basis in the opinion for denying recoupment in the other years. Which is why I think we read that summary remand opinion as pertaining to the issues and not – and trying to discern the various issues from each other which had overlapping years rather than, you know, trying to do something else. Frankly, we just didn't parse it out. But that last paragraph could have said you're going to go back to district court and you're going to recalculate it in a ward water for these years. And then you're going to look and see whether any other years, whether there's gauge error that might affect the judgment. And if you had thought that there was some ambiguity in this order, when you saw discernible years, four of the years listed, and you thought that there were eight years that should have been listed, you could have come back and asked for reconsideration. You could have asked for a PFR. There's a lot of things that you could have done. And it would be a clarification before you got back to the district court. You're absolutely correct. We won. We read the multiple – there's a remand instruction in the body of the opinion that just says we remand for recalculation of recruitment without the confidence interval. Well, it was done. Here's the – we didn't get the four years out of the blue because those were the years that the district court had said that there was excess diversion. Right. So – and we did not use the word across the board in the opinion. We were – I don't think that – I don't think that phrase was used in the opinion. I think it may have been in the briefs. But in any event, the four years that's in the conclusion appears to come from the – from the same four years that the district court had held there was an excess diversion. Now, the – and so your position now is that the district court was wrong in limiting our opinion to those four years. Yes. We think it should have, but we have an alternate position. We think the district court should have interpreted – the mandate consists of the opinion as a whole. And the opinion as a whole provides no justification for the denial in other years if you find that the recalculations show that TCID made unlawful diversions in those years. But our alternative position is that you should modify the mandate. And I do apologize that we did not catch this the first time around. We just didn't pursue. Well, it's true that in the paragraph that you were – in Section 6 of the opinion, it begins by saying – or it doesn't begin, but it quickly says, the district court determined that TCID had improperly diverted a certain amount in 1974, 1975, 1978, and 1979. And then it says TCID is not correct in the saying that the calculations have no support in the record. And then while we do not disturb the district court's general acceptance of their expert witness, we find that they erred in accepting such evidence in one respect. So that paragraph also is actually talking about those four years. Well, frankly, I guess I thought that those four years, it is talking about TCIDs. It follows by saying TCID isn't correct. Characterizing TCID's appeal is as to those four years. We never identified because those are the four years in which it lost. Right? But let me say – I mean, we, it seems to me, may well have made a mistake because the briefs don't limit the arguments to those years. There's no particularly logical reason why it should be limited to those years. So let's assume we made an error in that – it wasn't clear one way or the other. What – no one said they were limiting it to those years and no one said that you weren't, exactly, in the briefs. I looked at the briefs. But we – so let's assume that we at least made an error in not being – and we could have done it the other way. We didn't do it the other way. But then you didn't say anything about it. And it is at least a fairer reading of the combination of this section and the remand. I mean, it's very hard to fault the district judge, isn't it? Well, if it is – What we've done is now is waste an enormous amount of time because you didn't bring up an error to our attention. We didn't notice the error. And for that, I mean, I have to apologize. But I don't think that's a reason to punish the tribe and reward TCID for the – for – and not – and allow it not to repay for those – That's always – Assuming this was a failure of counsel. And the courts made the corrections there. It was exactly the same situation where there was a statutory mandate and a failure to do something, you know, until after remand. The Planned Parenthood case is the one where they – there was – they failed to ask for an instruction on post-judgment interest. And the court modified the mandate, recognized that it – the district court actually decided anyway, even though there was a rule that wouldn't allow that. That district court went ahead and awarded it. And this court approved it in modifying the mandate. And in Verrilli, they sought fees under an attorney general theory, private attorney general theory, attorney fees. And Congress had changed the law in the meantime. And they – I think before oral argument, but at any rate, before decision. And they had not notified the court. And the court changed it in both cases, saying that it was a failure of recognizing it as an incorrectness under a statutory – something that was statutorily owed and that was unjust, an unjust result that didn't – and here we actually have a whole – Statutory violated here. I don't understand that. Well, it's not – I mean – There's no statute. There wasn't. Well, no, the Settlement Act directed us to get the water for – Yeah. So we had a statutory duty to try to get this water. And – and – But that doesn't mean that you can try five different times to – I mean, there are principles of finality with respect to law. There are, but this court does – when there is good cause and there's a manifest injustice, does modify the mandate. And those – those circumstances are met here even more clearly than in those two cases. When you add up – there was a short dialogue in the last oral argument in which I asked how much acre feet are we talking about, and I don't know whether you argued, but there was an answer given, which I think was like 150,000 or something. Have you added up – could one have figured out from that – and there was a reference to the fact that there was some zeroing out, that in some instances the – the result of the gauge error was zeroing out. That's the total discussion anywhere in any of the briefs or anywhere, that by – if you really knew what you were talking about, you might think refer to these extra four years. But what about the amount of acre feet? I mean, is that – Frankly, we didn't have an expert do it at that point. I tried to fix Binder's calculations as best we could understand it. It appears that I underestimated on the diversions and overestimated somehow on the – on the – on the spills. And we actually got a little bit more water. I think what we should get is a little under 200,000 acre feet more. What did you get? What? What did you get extra? What did you get? We're seeking 84,000. We got 307 on remand and we should get 394,000. 307 additional or just 307 total? No. How much additional? Well, it was 197 and it went to 307. So – With or without the spills? Without the spills. I fortunately left my notebook in the room. Okay. But without the spills, I believe it went from 173. I do have it here in the – it's in our excerpts of record and I wish to read these. All right. You can tell us later. That's fine. Okay. Do you want to – But I – yes. I should let Mr. Springmeier. Okay. Thank you. Please, the Court. Don Springmeier on behalf of the Tribe. Your Honors, there's, to me, no discernible consideration of logic, law, or policy which would cut in favor of applying the Court's substantive holding about the gauge error to some years and not others. If we thought procedurally that those were the only ones in dispute, and that's the way that section reads, whether we thought that rightly or wrongly, I mean, people sometimes don't appeal everything. So in Section 6 of the prior opinion, it appears that we were of the impression which nothing in the briefs disabuses one of. I mean, there's nothing that says you are talking about every possible year or that you're not talking about every possible year. Your Honor, in the Tribe's briefs, that is true. We do say that. For example, in the summary of our argument, we say from 1973 to 1987, TCID deliberately, continuously, and defiantly violated the regulations. All right. But that doesn't address the gauge error specifically. And obviously the gauge error did not apply to all the years from 1973 to 1987. So it couldn't mean that. So it was some subcategory of those years that we're talking about. The problem is that because the gauge error is a percentage, and this is explained in Binder's testimony, it turns out that when you apply the gauge error to the total flow, you drop the excess diversions below the zero line. And that being the allowed... I understand that, but not for all of the years. So that's why the fact that you said we're covering 1973 to 1987 doesn't do it. We have to know what years you're talking about. You only were talking about a subcategory of those years, and nobody ever said what they were. That's true, Your Honor. But the principle of the evidentiary ruling should apply to any year, no matter whether it was zeroed out or not. It should. I mean, if the principle is correct, then the application of the principle should be correct. Substantively, yes, but procedurally, not necessarily. It isn't self-evident from that we knew that this was a mistake when nobody told us it was a mistake at the time. I understand your point, Your Honor. That's true. But one of the other considerations here is that if there's to be any balancing or weighing or equitable consideration by the court as to the procedural situation, the lake and the fish and the tribe are the blameless parties here, and TCID is enormously culpable. And so to the extent that it's possible to carry out the intent of Congress by recouping this water, even in the face of a more difficult procedural situation such as you describe, I urge the Court to come down. So you're asking us to treat this in a way that is different from the way we would treat other litigation, because normally, if the mandate issues and it says what it says and the opinion directs certain action on the part of the district court, then that's it. And so you're arguing that that's not it when we're talking about diversion, excess diversions of water from Pyramid Lake. I rely on the cases counsel has already cited to you about the circumstances under which it's appropriate to do something different, and the equities here weigh in favor of doing that something different. It isn't just that it's about water. I don't say that, no. You know, I have, I mean, even as another possibility, I mean, every so often in the middle of a remand, an issue comes up, and then somebody files with us a motion for clarification or a mandate or something like that. We occasionally entertain those. I mean, the result here really is an enormous waste of time. I mean, I don't know whether you would agree that the one thing, I don't think I agree with that, Your Honor, because I think the interpretation of the opinion as a whole should have produced a different result. And we did not know that it had gone off the rails until the judge issued his judgment, his opinion. Was there a hearing? I'm sorry? Was there a hearing? There was not. I see. Had there been one, you might have known, and you might have been able to make that judgment. In the case of the District Court, did you make a motion of the kind I described? That certainly would have been the case, yes, Your Honor. You did submit calculations for all those hearings? Yes, Your Honor. And that's in the record here at ER 12 through 29. And our whole brief was premised on the point we're making here. And we did not know the Court's interpretation of the situation until the end. Did your brief address the problem, the brief to the District Court? Did you say that the conclusion says this, but it doesn't mean that you should be limited to those years, or you just assumed it? We assumed the holding should be applied to every year in which the gauge calculation would change. Was there any further argument? Once you submitted that, was there any exchange from the other side that said, hey, wait a minute, you only get to look at these four years? Yes. The TCID opposed and said essentially the points that are being made here, that, no, it's too late, you should have done something different. And we responded in our reply brief, and then we got the order. So you did – so it was discussed in the brief, the problem? It didn't just go by the boards at that point? There was a discussion. There was opposition and response by us. Okay.  Thank you. Thank you. Thank you. May it please the Court, my name is Neil Bardak. I represent the Board of Directors of the Truckee-Carson Irrigation District. I'm accompanied by my colleague and counsel, Michael Van Zandt. Also at the table is Ms. Geddes and Ms. Ure for Nevada and Churchill County. I understand Nevada has relinquished its time, but I have to reserve three minutes for Ms. Ure. May I begin? Yes, you may. Okay. But help me if you begin by answering this question. Yes. Is there any logical reason why this limitation could possibly make sense, the limitation to the four years? I mean, aside from all the niceties of was there a mandate and so on. I mean, if we had been advised in a timely manner or had realized that there – is there any reason why we could have come to the conclusion that we came to? Well, keeping in mind that the Court had a six-week trial transcript and record yay high. That's meaning we made a mistake. But is there any reason that doesn't include a mistake as to why we could have come to the conclusion? Yes. Vendor's calculations in seven years indicated that the gauge error had not affected the years in question. And the problem that the Court is faced with now is this. Excuse me. Can you explain that? My understanding is that the gauge error could facially be seen to have affected the years in question. Is that not right? Well, in the district court it was found that it had not. Well, because the district court – it wasn't that the gauge error had affected it. In the first trial. The district court found that there wasn't any – he didn't recognize this gauge error that we later identified. But he – I'm sorry. I'm cutting off your words, Your Honor. So what I'm saying is if one accepts the gauge error the way we determined it in the first appeal, is there any theory on which it would not apply to the four years now being disputed? To 73, 76, 85, and 87. There are at least eight other factual findings that the district court made in the 2005 judgment and in the 2003 decision of why there was no over-diversion in the years in question now. This court is not in a position to go back and re-weigh what the district court might have seen because you've affirmed those findings. They never challenged them in the district court in 05. They never challenged them in this court after remand. And what were they? They're at page SCR 27 through 28. And it includes the safety of dams interim criteria on page SCR 29. And it includes three court orders in 85 and 86, which under Tribe v. Morton were a specific exception that could be relied on for OCAP. The problem that's created by the mistake or error that's been admitted to here is the following. This is a procedural issue. Does this court have the jurisdiction and the power post-remand to correct an error of a litigant represented by counsel? And that's what they're asking you to do. What about the error of the litigant? Their error was misunderstanding and misreading your mandate and not attacking in the district court after judgment or in this court after remand a clarification. And they let it ride until they got all the way up through Bell, through the mandate and back into the district court. And they realized they made a mistake in how they calculated and read the error. Counsel, let me rephrase, let me reframe the problem a little bit. Okay. Let's suppose that we had sent this back, as we did, to Judge McKibben. And Judge McKibben in the course of calculating the 74, 75, 78 and 79 years said, hey, wait a minute, I think there's gauge error in these other years. And as long as I'm correcting this, I think I better correct these other years as well. Now, you would have cried foul, and this would be your appeal. And is there any reason why we should, if this had been your appeal, and Judge McKibben had awarded it for eight years instead of four years, that we should disturb that judgment? Would it be an abuse of his discretion? Would it be wrong as a matter of law? What would be the problem? Well, he didn't have the jurisdiction to go outside your mandate, and I could not have required him to do that if we thought he should have reconsidered anything under your mandate in those years that you specified. In this jurisdiction, mandate is jurisdictional. The court cannot go beyond a specific order that you gave. You had perhaps the opportunity, had they brought it up, to reconsider your mandate, but as you pointed out in your earlier comments, they didn't ask the court. And they didn't ask the court because they now say they made a mistake in interpreting it. But TCID didn't have a mistake interpreting the clear wording of your order. This Court didn't have any mistake in writing the clear wording of your mandate. And Judge McKibben had no problem in the clear wording of your mandate. So what the ---- You're calling it a mandate. What it was was a couple sentences under conclusion in the opinion. I frankly never understood. We do issue something called mandate, and it didn't say these words. It said different words. And it's always been a bit of a mystery to me what it means when we talk about mandate. It's finality. I'm sorry? It's finality. At some point, there has to be a repose where the parties can rely. I understand that, but the question is how ---- I mean, their argument here is, well, you had that sentence in one place. In another place, you had a more general sentence. And so there was ---- one is no better than the other as to what the opinion is ordering people to do. Well, the court reviewed the record and reviewed Judge McKibben's decision. They call Judge McKibben's decision opaque in their briefing in this appeal. They didn't believe it was opaque in 19 ---- in 2005 when they could have challenged it in the district court, but we'll never know what McKibben would have done in 2005 because they never challenged what they now call an opaque decision. Well, it seems to me that ---- Excuse me. I'm sorry. My mistake. My apologies. That we sort of have a fork here. Either we just made a mistake, which would lead you to one set of considerations, or your argument is, well, we didn't make a mistake, that, in fact, there was a basis in the record for ---- and in the determinations made in the 2003 and 2005 orders for what we did. You treat the case very differently depending on what was so. So it would help me for you to tell me why we should go the second fork, which seems to me what you're arguing. And the reason is the court is going to open up the 2003 decision to the other factors and the weight that Judge McKibben gave them as to why there was no overdiversion in the four years. In fact, Father, would you tell me what it is? On what basis would we conclude? Or did he ---- do you think he concluded that there was no extra ---- no diversions of 73 and 75 and 85 and 86 ---- 73 and 76? Well, he pointed to, if I may, he pointed to obviously the double counting. He pointed to the OCAP criteria in its totality that Orlob didn't take into consideration in his calculations. But that all has to do with what we said wasn't true. What did he say that isn't involved with the gauge error that would have supported the conclusion? The 85 and 86 diversion orders, the terminal flow reports, irrigation diversions, all which were exempt from OCAP, use of water for non-irrigation purposes. I see it was part 85, 86 that there's something there. Yes. What about the other two years? He didn't allow for irrigation uses other than irrigation in the non-irrigation season that were permitted. He didn't permit in 86 for allowing excess diversions to cover flood situations and that were discounted and were not to be included in OCAP. There were a number of factors that he pointed to that were never attacked in the district court. They weren't attacked in this court in Bell. They only attacked one factor, gauge error. So this Court is left with a blank slate, and I'm being asked, from what I gather, to give a factual judgment call as to what other factors and what weight to give them. Judge McKibben came to the conclusion that in the four years before this court, there was no over-diversion subject to OCAP, and any number of these reasons might have been the basis for him to conclude that. In the record before this court, it was, in fact, affirmed. So on that basis, I don't think you can go back, and there's no justification to go back and to correct something that several layers could have been corrected by a litigant. There's no precedent in the Ninth Circuit. The case of Verrilli and Planned Parenthood, at the caution of both Judge Schroeder and Judge Barzun, you were on those panels, had nothing to do with the facts of this case. And Verrilli, everybody did not understand that Congress came down and permitted recovery of attorneys' fees in civil rights cases. The reasons that you are suggesting for affirming the conclusions with regard to 73, 76, 85, and 86 are not in our opinion, right? They were not discussed. No, they were not raised by the United States Attorney. I understand the 85 and 86 point. I don't understand the 73 to 76 point. In your brief, you give some reasons, but the reasons are generic reasons that would have applied to everything if we bought it. The discussion, you rely on expert testimony from Dr. Orlob and Michael Turnstein and so on, all of which was generic. It didn't deal with us those years, right? They applied to all the years that Judge McKibbin brought. Exactly. So therefore, there's no reason in the world that we would have bought that for some years and not other years. Not without having it brought to your attention in Bell. Well, it didn't have to be brought to our attention because they were appealing it on one ground and not on another ground. And unless we were for some reason going to find this and rely on it for the years that we didn't cover but not for the years we did cover, why would we do that? Because you affirmed it on all the other grounds that weren't appealed. Correct. But we didn't – there's no differentiation on that ground. If we were going to rely on that ground, we would have relied on it across the board. It would have washed over the years that we did say you should go do it over for, right? Am I right about that? I think you're right on that, Your Honor. All right. So in other words, there's no basis for separating 73 and 76 out from the other years. It might be for 85 and 86. It wasn't in the district court. It wasn't an issue that was raised on appeal by the government of the tribe. So this Court never had a chance to make that determination. Therefore, we didn't make that determination. Therefore, we didn't rely on it as a reason for affirming those years and not the other ones. I don't think – So that leads me, at least off the top of my head at the moment, to think, well, maybe there's something in what you're saying for 85 and 86. But for the other two years, we just made a mistake. So let's assume that for now, that we made a mistake. As long as I don't have to concede that. Okay. So then the question is, at that point, do we visit our mistake on the litigants because they could have helped us out, which they could have, certainly, by bringing the mistake to our attention at some point, but they didn't. And do we give that – and this is the way I see it. Do we give that substantive conclusion because we made a mistake and they made a mistake? Or do we say, well, look, we made the first mistake and we ought to fix it? Well, I don't think there's any record before this Court that this Court made a mistake in Bell. I don't know how you can conclude that you were in error in those two years, 73 and 76. I just told you one. I just started to assume it. Let's assume it for now. Assume it, yeah. Two things come to mind. One, the Court wouldn't have to give relief from law the case so they could go back to Judge McKibben. You would have to give them relief, give them a pass, as it were, for not having brought it to the Court's attention under Rule 41 and bringing it to the Court so belatedly. There is no case in this circuit that I've read that would justify that. It opens up a very, very difficult explanation in future cases as to why the mistake of a litigant, whether it's the tribe or any other litigant. But it's a funny mistake. It's a mistake and not telling us about a mistake. But it's still, at the end of the day, the Supreme Court has directed in several cases from Briggs on down that the mistake of a litigant is not justification for setting aside and recalling a mandate. And I would hope to stand on that ground because I see no other authority out of the Ninth Circuit that would justify using the mistake of a litigant, no matter how non-calculating it might be, to permit a setting aside and recalling a mandate, to reopen a factual finding in the district court, to clear up something that should have been brought to this Court's attention on two different levels, if I can leave it at that. I may be out of time. I don't know. Kagan. You're at five minutes. I have five more minutes? Okay. But I have to leave three for my co-counsel. One other thing I wanted to say is that at this time, after 30 years plus of litigation, it should no longer be, you know, about what TCID did or didn't do over a period of years in violating OCAD. You've got a very strong ground from what I know about the history of this case. It's not. But at some point it becomes a matter of litigants who are entitled to procedural protection, and I think that's where we are in this case. This is a procedural case. It is a case that in many ways is garden variety. You could have brought it to our attention, too. You also could have brought the mistake to our attention. Nobody was stopping you. Well, I don't know if it was our obligation to do that. At the time that the case was tried, we tried on the error that they claimed, and it was only one of seven or eight errors that Judge McKibben considered. So I don't know that we necessarily were in a posture where that would have been something we would have done from an advocate's point of view. I don't think this Court made a mistake. I don't think there was an error in your mandate. I don't think that Judge McKibben abuses discretion in following your mandate. I don't think he had the power to do otherwise.  It is. But when they were back in the district court, none of this would have arisen. They did raise that in their appeal, and that's one of their grounds for appeal, is that Judge McKibben, that's their first grounds for appeal, that Judge McKibben abused his discretion. I don't think he had no other choice other than to follow the mandate of the court, the specific direction of the court. The next ground for their appeal is this Court should therefore grant them a recall, which is an extraordinary remedy. And for all the reasons the Court has pointed out, I don't want to repeat, it is not something that should be taken lightly where a litigant hasn't availed themselves of the procedural protections. Kagan. You're now beyond the three minutes, so thank you. Okay. Thank you very much for your attention. May it please the Court. My name is Tracy Year, representing intervener defendant Churchill County, who is a water right holder in the Newlands Project. The judgment specifically stated that Churchill County will be bound by the judgment but not individually liable. Our issue on appeal is one. Did the district court air as a matter of law when it issued the 2012 amended judgment adding new recoupment terms without briefing or a hearing on the remedy? All he did was repeat what he said in 2005. I'm sorry, I didn't hear you. Didn't he simply repeat what he said in 2005? He repeated what he said in 2005 and then added that the repayment will be made through diversions, through water savings, decreased water demands and acquisitions. So I believe that was new. It is important to Churchill County because they are a water right holder. TCID hardly has any water rights in this project, and so in order to effectuate the recoupment order in this case, it will be the individual water users who have to make acquisitions. And that also includes the State of Nevada, the City of Fallon and the others. It is important to note that several years, the parties do not even receive their full allocation of water. Like in 2013, Churchill County is only receiving 75% of their water. So if recoupment is ordered in equal payments per year, then that will suffer. The 2005 order ordered recoupment in equal payments per year, right? Yes. So that didn't change? No. Okay. It seems to me your problem is that you didn't, I don't remember whether you didn't appeal this in 2005 or it wasn't, or you lost. I don't know which. But in any event, it's not new. No, the equal repayments is not new. The 2003 order bifurcated the liability phase and the recoupment phase. Right. You're complaining now about that, the fact that you didn't get a hearing before the 2005 order. That's really what you're complaining about. The 2005 order stated, I guess it was in the 2003 decision is what bifurcated the case, and it said that it was certifying the decision on liability to allow the parties to file interlocutory appeals in consideration of any right. All right. But then there was a second judgment. The final judgment was the 2005 judgment. That's from once the appeal was taken. Correct. There was no appeal then by you, as I recall, to complain about the fact that you didn't get a hearing and that the bifurcation promise in 2003 wasn't followed up on. Correct. How can you complain about it now? We're complaining about it now as it's a matter that's going to affect the water right holders. And the way that the 2012 amended judgment is structured with how the water is to be repaid will affect the water right holders. And so we're just asking that the parties come back before the court to set how that water is going to be repaid. So I believe I am out of time. Thank you. I'd like to address the 8586 question, which is addressed in a fair amount of detail in our brief. But the point is that there was a sentence in there. There was a sentence. But the sentence doesn't come along with any amount of water to accompany the statements. And so it doesn't, you don't know what effect the sentence has. Well, I thought the sentence was you can't do it. No? What was the sentence? The sentence says, The evidence established that in 1985 and 86, the decree court entered orders with regard to diversions by the Federal Water Master for spreading and diversions in 85 and 86 that take precedence over any interim OCAPs for those years and any diversions or deliveries that occurred under court orders are not properly a part of any recoupment calculation. Well, those court orders were as follows. An order that was entered in January 15th, 1985, to take care of a period where there were no interim OCAP approved at that time, and the interim OCAP were approved on March 20th. TCID had agreed in a temporary contract to try to apply. But your bottom line just said that if you go through the details, there's really no, either no water or there's still some more water for 85 and 86. Right. There may be certain periods of time for which there should be water excluded, but TCID never came forward with those data. Its whole approach in the case was to, as you remember in the appeal, was to just say the OCAP aren't valid. You said that that holding was not a holding that there's no recoupment for those years. It's a holding that there was less recoupment for those years than might otherwise be the case. All that sentence means is there's something to be taken off whatever the recoupment is. Right. Right. And I think it was TCID's burden to argue an alternative ground for affirmance. And certainly because their expert is the one who zeroed out the years in which recoupment didn't occur, they should have been known which years it wouldn't. We actually were not. We didn't have an expert go through because he made a variety of adjustments to the data. And so we were just relying on the lawyers trying to figure out what we would get afterwards on a recalculation. I don't know if you have further questions. Again, we did not. I mean, the first time I knew I recognized what the summary remand instruction could mean was after we got the district court opinion. And I have to say I nearly died. And, you know, the earliest we could have done anything about it would have been after the response brief was filed by TCID, in which we just had to file our reply. And in district court, I don't know that that would have saved anybody much time. If we could have done a motion for clarification or if the district court would have let us at that point. But we do believe that the equitable thing to do, and under this court's rules about modifying the mandate, is to order the district court to award us the 394,029 acres. Would that be a relatively simple thing because the numbers are all sitting there? Yes, and they're undisputed. But then there would be this issue about 85 and 86. But I don't think that's waived at this point. I mean, we'd have to go back. The district court didn't say it wasn't a holding. We couldn't have appealed it because we didn't disagree that there could be some water, but we didn't know what we would appeal, right? They could have argued an alternative ground for affirmance, but they also didn't have numbers because they never put the data forward. I think that issue is gone. And even in the district court, they made a somewhat different argument. They didn't tell the district court that it had already addressed this issue. They just argued to the district court the merits of the, you know, kind of these orders. They just made their argument all over again. So the district court didn't even have an opportunity to explain what it meant. They raised that for the first time on appeal here. So ‑‑ Okay. Your time is up. Thank you. Thank all of you. Thank you very much. The United States v. Pyramid Lake Peyote Tribe of Indians case is submitted, and we are in recess. Thank you very much. Thank you. Thank you.
judges: Schroeder, Berzon, Bybee